DENISE KJELLESVIK, Respondent-Appellant, *v.* RICKY LEE SHANNON, Petitioner-Appellee.

Third District   No. 75-109

Opinion filed August 31, 1976.

John L. Barton, of Marseilles, for appellant.

Black and Black, of Morris (George Black, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Petitioner, Ricky Shannon, filed this action on October 11, 1973, seeking to modify a divorce decree and change custody of the four-year-old daughter of the parties from respondent mother, Denise Kjellesvik, to petitioner. Following a hearing, the trial court found that both parties were fit parents and further found that a change in circumstances since the divorce affected the best interests of the child, requiring that custody be transferred to Ricky. Denise appeals contending that there was insufficient evidence to support the change of custody, that she should have been granted a jury trial and that she was entitled to an award of attorney's fees and costs.

The evidence showed that on May 17, 1971, Denise was granted a divorce from Ricky and was awarded custody of the child Tricia. Denise lived with her parents until she married her present husband, Orvin Kjellesvik, on July 16, 1971. Denise quit her job at the time of this marriage to work in their home and, in 1972, gave birth to twins. During the first two years of the marriage, Denise and Orvin changed residences five times.

Orvin quit his job in February 1972 and did not obtain new employment until two months later. In September 1972 he received an injury to his leg which required surgery, and he now wears a foot brace. He has not been employed since the injury and has applied for one job since that time. Denise, Orvin, and the three children are supported by public aid and disability payments. Child support payments from Ricky for Tricia go into a common fund, along with the public aid payments to pay the monthly bills of the family. At the time of the hearing Orvin was attending Southern Illinois University and majoring in electrical engineering. He had earlier attended Joliet Junior College where he did not complete the fall semester but did complete the spring semester.

In 1966, Orvin voluntarily entered the University of Washington Hospital due to mental problems. In November 1972 he took an overdose of Darvon and Valium and left the house. Denise called the police, who found Orvin walking down the middle of the road and put him in jail overnight for his own protection. He entered St. Joseph's Hospital in Joliet for psychiatric treatment in December 1972, remaining for 10 days, and began receiving treatment from a psychologist in June 1973. In September 1973 Orvin was found by the police on the Illinois River bridge. Orvin testified that he was contemplating suicide at that time, and a police officer testified that Orvin had stepped over the guard railing to a cement pier and was one step from the edge of the pier. Later that night Orvin was taken to Tinley Park State Mental Hospital and, three days later, he was admitted to Grundy County Mental Health Center. In October 1973 he again entered St. Joseph's Hospital for psychiatric treatment.

On four occasions Orvin left Denise and the children following marital quarrels and stayed away from the family residence. On one occasion he did not return for five days, and lived out of his car in a rest area.

Ricky is employed and earning approximately $12,000 per year. He is remarried and has a one-year-old daughter. His wife is a jail matron in Grundy County, and they live in an apartment above the jail. There is no direct access from the jail to the apartment, and there is a yard where children can play which is not directly in view of the cells. The rent and utilities are paid by the county, and the apartment has sufficient room for Tricia. Ricky has regularly exercised his visitation rights and has taken Tricia to various places with his family on his vacations.

There was other evidence presented tending to show that Tricia is occasionally improperly dressed and that Denise has not adequately taken care of Tricia's medical needs; however, this was contradicted by evidence presented by Denise.

Testimony of several neighbors that the Kjellesvik house is well-kept and the children, including Tricia, are well cared for and receive love and

attention from Denise and Orvin, was presented. Orvin testified that his mental difficulties had arisen from confusion and depression and were aggravated by his injury. He stated that the treatment and counseling he's received have enabled him to cope with these difficulties and to work toward a college degree and gainful employment. He also testified that a medical malpractice suit that arose from the surgery on his leg was in the process of being settled, and that there had been an offer of $100,000.

Denise, in her testimony, stated that Tricia knew that Orvin had been in jail after he had taken an overdose and was aware of the other incidents where Orvin had been hospitalized or had left the family. She testified that Orvin was a good father, but admitted that his absences were upsetting to her and were probably not good for the children.

■■ In a hearing to modify child custody provision the paramount concern is the best interests of the child. After a divorce decree custody may be changed as the best interests of the child dictate, based on new conditions which have arisen since the decree and which affect the welfare of the child. (*Sorenson v. Sorenson* (4th Dist. 1973), 10 Ill. App. 3d 980, 295 N.E.2d 347.) In child custody matters, the trial court is vested with broad discretion, subject to review, in determining where the best interests of the child lie. (*Maroney v. Maroney* (3d Dist. 1969), 109 Ill. App. 2d 162, 249 N.E.2d 871.) As the trial court is in a superior position to determine the best interests, that determination will not be disturbed on review unless it is clearly against the manifest weight of the evidence or represents an abuse of discretion. *Randolph v. Dean* (3d Dist. 1975), 27 Ill. App. 3d 913, 327 N.E.2d 473; *Wilner v. Wilner* (3d Dist. 1971), 131 Ill. App. 2d 891, 266 N.E.2d 918.

■■ A change in circumstances justifying a modification of a child custody award need not relate solely to the custodial parent, nor is it necessary for the court to find that the custodial parent is an unfit person if other circumstances warrant modification. (See *Kline v. Kline* (3d Dist. 1965), 57 Ill. App. 2d 244, 205 N.E.2d 775.) A subsequent marriage of a parent and stability of environment are important considerations. *Holloway v. Holloway* (1st Dist. 1973), 10 Ill. App. 3d 662, 294 N.E.2d 759; *Cave v. Cave* (5th Dist. 1971), 2 Ill. App. 3d 782, 276 N.E.2d 793.

Here, the trial court found that although Denise was a fit parent, her marriage to Orvin constituted a change in circumstances necessitating a change in custody for the best interests of the child. The court found that Orvin demonstrated weakness of character and instability and that Orvin's mental illness and separations from the family created an unstable environment for Tricia. The court concluded that Denise and Orvin could not provide a reasonably suitable environment for Tricia, and that Ricky was a fit parent and had demonstrated that he could provide proper care for the child.

■■ The record shows Orvin's history of serious psychological problems and hospitalization for those problems. Mental illness can be an important factor, particularly, as here, where there is an absence of evidence that the person has recovered. (*Corcoran v. Corcoran* (1st Dist. 1967), 79 Ill. App. 2d 328, 224 N.E.2d 611.) In addition, Orvin on several occasions left the family following marital quarrels, and there was testimony that Tricia was aware of several of these incidents, as well as Orvin's hospitalizations. The trial court having seen and heard the witnesses, was in a superior position to determine whether there was a change in circumstances affecting the best interests of Tricia. In view of the entire record, we cannot say that the court's finding that Denise and Orvin could not provide a reasonably stable and suitable environment for Tricia is manifestly erroneous.

Denise also contends that evidence was admitted regarding the religious affiliations of the parties and the religious training provided for Tricia, and that this evidence violated the constitutional requirements as to separation of church and State. The record shows that the trial court allowed the evidence to be admitted as relevant only insofar as gaining insight as to the entire family picture. As we read the record, it does not appear that the trial court's decision was influenced or determined by any question of religious preference. (*Wilner v. Wilner* (3d Dist. 1971), 131 Ill. App. 2d 891, 260 N.E.2d 918.) Moreover, this was a proceeding without a jury, and it is presumed that the court in reaching its decision disregarded any improperly admitted evidence if the record contains sufficient competent evidence to sustain the result. (*Maroney v. Maroney* (3d Dist. 1969), 109 Ill. App. 2d 162, 249 N.E.2d 871.) We have found that the court's determination is supported by the record and, accordingly, we find no error in this respect.

Denise next contends that her demand for a jury trial was improperly denied.

■■ We note first that, although the petition was filed on October 11, 1973, there was no jury demand until July 3, 1974, after Denise's original counsel had withdrawn and she was represented by a different counsel. By this time, Denise had responded to the petition, participated in discovery and filed several motions. Under these circumstances, we do not believe the demand was timely. (See *Fox v. Fox* (1956), 9 Ill. 2d 509, 138 N.E.2d 547.) Moreover, under section 63 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 63), the granting of a jury trial in equity cases is discretionary with the trial court, and denial of a jury demand is not error unless an abuse of discretion is shown. (*Sidwell v. Sidwell* (4th Dist. 1975), 28 Ill. App. 3d 580, 328 N.E.2d 595.) Here the court stated that the determination of the child's best interest was better left to the court and not a jury, and we do not find that this decision constituted an abuse of

discretion. *Houston v. Brackett* (2d Dist. 1963), 38 Ill. App. 2d 463, 187 N.E.2d 545.

The respondent, Denise, also objects that the trial court did not award her attorney's fees and costs.

■■ It is well settled that the awarding of attorney's fees is within the sound discretion of the trial court. (*Tan v. Tan* (1st Dist. 1972), 3 Ill. App. 3d 671, 279 N.E.2d 486.) Although Denise was being supported by public aid payments, the trial court could also consider the pending settlement in the malpractice suit. During the pendency of this appeal, Denise's motion to proceed as a poor person was withdrawn because the settlement had been concluded. In view of these circumstances, we do not believe that the trial court erred.

Accordingly, the judgment of the Circuit Court of Grundy County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.